# UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE
### AT GREENEVILLE

ALDIFONSO F. GONZALES, JR.,   )
      **Petitioner,**   )
          )
**v.**   )      **No. 2:06-CR-11**
          )      **No. 2:08-CV-22**
**UNITED STATES OF AMERICA,**   )
      **Respondent.**   )

## <u>MEMORANDUM OPINION</u>

Aldifonso F. Gonzales, Jr. ("petitioner" or "Gonzales"), a federal prisoner, has filed this "Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody," [Doc. 154].[1]  The United States has responded in opposition, [Doc. 181], and the defendant has replied to the government's response, [Doc. 182].  In addition, the petitioner has filed a motion for an order holding his § 2255 motion in abeyance until he can file a collateral challenge to a prior conviction, [Doc. 169].  The Court has determined that the files and records in the case conclusively establish that the petitioner is not entitled to relief under § 2255 and, therefore, no evidentiary hearing is necessary.  Furthermore, the Court has determined that the petitioner's motion to hold his § 2255 motion in abeyance is not well taken.  For the reasons which follow, the petitioner's motion to hold his § 2255 motion in abeyance will be DENIED and his § 2255 motion, which likes merit, will also be DENIED.

## I.    Procedural and Factual Background

---

[1]    All references to docket numbers are in case number 2:06-CR-11.

Gonzales was indicted by the federal grand jury on April 11, 2006, [Doc. 1], along with co-defendants John Tracy Davis and Johnny Joseph Fachorn, Jr. Gonzales was charged in three counts of the eight count indictment. In Count One, Gonzales, Davis and Fachorn were charged with conspiracy to distribute and to possess with the intent to distribute five kilograms or more of cocaine; in Count Two, Gonzales, Davis and Fachorn were charged with conspiracy to distribute and to possess with the intent to distribute 500 grams or more of methamphetamine; and in Count Three, Gonzales, Davis and Fachorn were charged with attempt to possess with the intent to distribute five kilograms or more of cocaine. A superseding indictment was returned by the grand jury on June 13, 2006, [Doc. 27].

On July 7, 2006, the United States filed an information pursuant to 21 U.S.C. § 851(a)(1) to establish prior convictions, [Doc. 43]. The information alleged a conviction on October 23, 1997, in the District Court for Nacogdoches County, Texas, in case number 6810-96-4, for the felony offense of possession of a usable quantity of marijuana in an amount of five pounds or less but more than four ounces, and a conviction on November 3, 1997, in the 22nd Judicial District Court, Parish of St. Tammany, Louisiana, in case number 243472, of the felony offense of possession of a schedule I controlled dangerous substance, with the intent to distribute, to wit: marijuana. On October 19, 2006, a plea agreement between Gonzales and the United States was filed, [Doc.76] wherein Gonzales agreed to plead guilty to Count One of the superseding indictment charging him with conspiracy to distribute and to possess with the intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1). Filed along with the plea agreement was an agreed factual basis, [Doc. 77]. The agreed factual basis

contained the following stipulated facts:

> Through the testimony of several witnesses, to include law enforcement agents and confidential informants, the government would demonstrate, beyond a reasonable doubt, that from approximately December 1, 2004, up to and including February 17, 2006, the defendant did knowingly and intentionally combine, conspire, confederate and agree with at least one other person to distribute and possess with the intent to distribute ten kilograms of cocaine, a Schedule II controlled substance.

> Between January of 2006 and February 17, 2006, the defendant and indicted co-conspirator Johnny Fachorn, Jr., brokered a drug transaction on behalf of indicted co-conspirator John Tracy Davis from a confidential informant in Texas for the delivery of ten kilograms of cocaine from Texas to A-1 Limousine, a business owned by Davis and located in Bristol, Tennessee. At the direction of DEA agents, the confidential informant made several recorded phone calls and had one recorded in person meeting with the defendant and Fachorn regarding the quantity of cocaine to be delivered as well as the price. The agreed upon price included cash for eight kilograms of cocaine and a Black Ford Excursion owned by John Tracy Davis for the remaining two kilograms. The drug transaction was to occur on February 17, 2006 at A-1 Limousine. Shortly before the transaction, on February 17, 2006, DEA agents served and executed search warrants on both A-1 Limousine and the residence of Davis. The defendant was located at the Davis residence, along with Fachorn and Davis. Agents seized approximately $78,000.00 in US currency from that residence. The Black Ford Excursion was found at the business, A-1 Limousine.

The petitioner entered his guilty plea on October 19, 2006. A presentence report ("PSR") was ordered.

The PSR established petitioner's advisory guideline range at 262 to 327 months of imprisonment because he was a career offender pursuant to USSG § 4B1.1 based upon his two prior felony drug convictions. However, he was subject to a statutory mandatory minimum life

sentence pursuant to 21 U.S.C. § 841(b)(1)(A).  As a result, petitioner's guidelines range was mandatory life imprisonment.  No objections to the PSR were filed by either the government or by Gonzales.  On February 26, 2007, the United States filed a motion for downward departure pursuant to 18 U.S.C. § 3553(e) and USSG § 5K1.1 based on petitioner's substantial assistance, [Doc. 128].  The United States recommended a sentence of 192 months in its motion.

At petitioner's sentencing hearing on March 12, 2007, the petitioner was asked to affirm or deny the prior convictions alleged in the government's previously filed information to establish prior convictions and he affirmed each conviction, after being advised that he could not thereafter challenge either prior conviction once the sentence was imposed.  The government's motion for downward departure was granted and Gonzales was sentenced to a term of 192 months of imprisonment.  Judgment was entered on March 15, 2007, [Doc. 136], and no direct appeal was taken.  The instant motion was timely filed on January 18, 2008.

On September 7, 2010, a motion was filed by the United States for sentence reduction pursuant to Rule 35 of the Federal Rules of Criminal Procedure based upon petitioner's substantial assistance in the investigation or prosecution of another person subsequent to his sentencing, [Doc. 197].  For the reasons set forth in the government's motion, the United States recommended a further reduction in petitioner's sentence to a sentence of 156 months.  The Rule 35 motion was granted on September 10, 2010, and an amended judgment was entered in which Gonzales was sentenced to a term of imprisonment of 156 months, instead of a term of 192 months, [Doc. 198].

## II.    Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, ..." 28 U.S.C. § 2255.   Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief.  If it plainly appears the movant is not entitled to relief,  the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961).  "Conclusions, not substantiated by allegations of fact with some probability of verity,  are not sufficient to warrant a hearing."  *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons  v.  Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994).   *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion).   If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams*

*v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland* 466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F. 2d 1073,

6

1081 (3d Cir. 1985).    In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688.    A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690.  The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires that the petitioner show counsel's deficient performance prejudiced the defense.    Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.  The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  The *Strickland* Court emphasized that both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.  Courts should strive to ensure that ineffectiveness claims not become so

burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

## III.    Analysis and Discussion

Gonzales raises two related claims for relief in his original motion.  He first asserts that he is entitled to resentencing based upon the "vacatur of his prior drug felony conviction" and, secondly, that counsel performed ineffectively in failing to object to or to challenge the use of the Louisiana conviction.  Gonzales acknowledges that he has not yet been successful in a collateral attack on the Louisiana sentence.  He alleges that he had such a pending challenge at the time of the filing of his original petition but, in a later pleading, states that the petition has been dismissed without prejudice and that he intends to refile the petition in federal court in Wisconsin.  Gonzales appears to raise several additional issues in his reply to the government's response.  Those issues are: (1) Enhancement of his sentence pursuant to 21 U.S.C. § 851 was a violation of his plea agreement because "the information filed under 21 U.S.C. § 851 was not to be filed and used against [him]"; (2) the use of USSG § 4B1.1 was a violation of his plea agreement; (3) he was not subject to a mandatory life sentence because the government agreed in the plea agreement to drop its § 851 enhancement notice and agreed that his sentence would not be enhanced under the career offender guideline; and (4) his "sentence should have been calculated from the drugs that were taken from [him]."

The indictment in this case charged Gonzales in Count One with a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).  Gonzales pled guilty to Count One of the superseding indictment.

21 U.S.C. § 841(b)(1)(A) provides: "If any person commits a violation of [subsection (a)] . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release . . ." 21 U.S.C. § 841(b)(1)(A). Whenever the government seeks enhanced punishment under this provision of the law, 21 U.S.C. § 851(a) requires the United States Attorney to file an information with the Court stating in writing the previous convictions to be relied upon. Section 851(b) provides:

> (b) If the United States attorney files an information under this section, the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

21 U.S.C. § 851(b).

Once the prosecution has filed a timely notice of its intention to enhance a defendant's sentence, § 851(b) requires the court at the sentencing hearing to engage in a colloquy with the convicted defendant before enhancing his sentence in order to afford the defendant an opportunity to challenge the prior conviction or convictions before they are used for enhancement purposes. *United States v. Hill*, 142 F.3d 305, 312 (6th Cir. 1998). The statute also provides, however, that no defendant "may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction." 21 U.S.C. § 851(e).

As set forth above, the United States filed an information to establish prior convictions

pursuant to 21 U.S.C. § 851(a)(1) on July 7, 2006, giving notice to the defendant of the government's intention to seek increased punishment by reason of two prior felony drug convictions. The information alleged convictions on October 23, 1997, in the District Court for Nacogdoches County, Texas, in case number 6810-96-94, of the felony offense of possession of a usable quantity of marijuana in an amount of five pounds or less but more than four ounces, and a conviction on November 3, 1997, in the 22nd Judicial District Court, Parish of St. Tammany, Louisiana, in case number 243472, of the felony offense of possession of marijuana, a schedule I controlled dangerous substance, with the intent to distribute. [Doc. 43]. At no point during these proceedings did Gonzales ever notify this Court of any challenge to either of these prior convictions. He did not comply with § 851(c) nor file any kind of response to the government's notice of enhancement; he filed no objections to the PSR; and he made no objection to the prior convictions at the sentencing hearing. In fact, the petitioner specifically affirmed both of the prior felony convictions at the sentencing hearing. Furthermore, Gonzales was informed by the Court that any objection he had to either of the prior convictions must be raised before sentencing and that he could not thereafter raise such a challenge to the conviction. He acknowledged that he understood that any objection must be made prior to sentencing and reaffirmed both of the prior convictions. [*See* Doc. 170, Tr. of Proc., March 12, 2007, pp. 14-16].

Gonzales now argues as ground one in his motion that one of his prior convictions, specifically the felony drug conviction in Louisiana, is invalid and cannot be used to enhance his sentence. He recites that he has filed a post conviction motion challenging his prior conviction in the state court and he moves that this matter be held in abeyance until the "finalization of the

state case." Because petitioner's argument fails on the merits, his request for this matter to be held in abeyance is also not well taken.

First of all, the argument made by Gonzales is meritless because he never, at any time, exercised his option to object to the use of the prior convictions to enhance his punishment at any point during these proceedings. Secondly, although he argues that the Louisiana conviction is subject to collateral attack because he was not present at the sentencing hearing, he overlooks the statute of limitations in 21 U.S.C. § 851(e) which provides that a defendant may not challenge the validity of a prior conviction for the purposes of the statutory enhancement where the conviction occurred more than five years before the date of the information filed by the United States Attorney. The government's information was filed in this case on July 6, 2006. The date of the Louisiana conviction was November 3, 1997, and the date of the Texas conviction was October 23, 1997. Both of these convictions are clearly outside the five year statute of limitations contained in § 851(e). The efforts of Gonzales to obtain collateral relief on either or both of these state convictions is, therefore, completely immaterial with respect to the application of the statutory enhancement in this case.

And, the validity of § 851(e) has been upheld by the Sixth Circuit in *United States v. Reid*, 141 F.3d 644 (6th Cir. 1998). There, the Sixth Circuit said: "Congress could choose to eliminate all collateral attacks on prior convictions with regard to sentence enhancement, save for the limited circumstance in which the prior conviction was obtained in violation of the right to have counsel appointed." *Id.* at 652. The Sixth Circuit held the five year statute of limitations in § 851(e) to be constitutional and no court has come to a contrary conclusion. The holding in *Reid*

makes it clear that the only limited circumstance which might render a statute of limitations such as the one in § 851(e) unconstitutional would be where a conviction had been obtained in violation of the right to have counsel appointed. That is not the case here. The unobjected to PSR establishes that Reid was represented by counsel and the only claim he now raises is that he was sentenced *in absentia*. Both the request of Gonzales for this matter to be held in abeyance and his request for relief based upon the § 851(b) enhancement are without merit.

Because the claim of Gonzales related to § 851 is without merit, so too is his claim that his counsel was ineffective for failing to raise the meritless issue. Counsel is not required to raise futile or meritless objections in order to avoid a claim of ineffective assistance. *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). Not only was Gonzales barred by the terms of § 851(e) from collaterally attacking the Louisiana conviction for the purpose of the application of the sentencing enhancement, he also waived any challenge in that respect. *See* 21 U.S.C. § 851(c)(2) ("any challenge to a prior conviction, not raised by response to the information before an increased sentence is imposed in reliance thereon, shall be waived unless good cause be shown for failure to make a timely challenge.") Petitioner's trial counsel here cannot be deemed ineffective for failing to raise this meritless issue and, even if he somehow could be, Gonzales has suffered no prejudice as a result of the alleged failure. This claim lacks any merit as well.

As noted above, Gonzales also raises some additional issues in his reply to the government's response. First of all, he argues that the use of a § 851 to enhance his sentence violates his plea agreement. He does not further elaborate on this argument except that he claims that he agreed in his plea agreement that the government would not use the § 851 information for

any purpose. A review of the plea agreement, [Doc. 76], fails to reveal any such agreement. In addition, Gonzales acknowledged that he had read the plea agreement, that his attorney had explained all the terms and conditions of the plea agreement and that he fully understood all the terms and conditions of his agreement. [*See* Doc. 171, p. 6]. He further acknowledged that no other promises of a lighter sentence or leniency had been made to him by any officer or agent of the government. [*Id.* at p. 8]. Furthermore, the plea agreement itself contains a provision that the plea agreement contains the full and complete understanding of the parties "and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States." [Doc. 76, p. 9]. Gonzales's argument that the use of the § 851 information somehow violated his plea agreement is completely without merit.

Next, Gonzales makes a similar claim about the use of USSG § 4B1.1, the career offender provisions of the guidelines. A review of the plea agreement in the case fails to reveal any reference to the career offender guideline; in fact, the plea agreement specifically provides that "the United States Sentencing Guidelines *will* be considered in defendant's case to determine the appropriate sentence." [Doc. 76, p. 3 (emphasis added)]. Gonzales specifically acknowledged that any sentencing determination would be based upon "the entire scope of defendant's criminal conduct, defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553." *Id.* Additionally, Gonzales can show no prejudice from the use of the career offender guideline to calculate his advisory guideline range since the guideline range was basically immaterial in view of the mandatory life sentence required by § 841(b)(1)(A).

Then, Gonzales makes the rather incredible argument that "[t]here was no mandatory life sentence in my case" and argues once again that the § 851 information was withdrawn by his plea agreement and his sentence was illegally enhanced under the career offender guideline. As set forth above, Gonzales's arguments with respect to the § 851 enhancement and the career offender guideline are completely meritless. In addition, his allegation that there was no life sentence which applied to his case and that he had some different understanding as a result of his plea agreement is completely and unequivocally contradicted by the record. In the plea agreement filed on October 19, 2006, paragraph 2 provides that "[a]s a result of his prior convictions, the maximum penalty to which the defendant will be exposed by virtue of his guilty plea is a *mandatory* term of imprisonment of life." [Doc. 76, ¶ 2 (emphasis added)]. At the hearing on his change of plea on October 19, 2006, the defendant was specifically advised as to the maximum possible penalty provided by the law for his offense and that exchange also undermines completely the credibility of any allegation by Gonzales that he thought the § 851 notice of enhancement was no longer an issue.

The following exchange took place after Gonzales pleaded guilty to the offense of conspiracy to distribute and to possess with the intent to distribute five kilograms or more of cocaine:

THE COURT: All right. Ms. Hebets, will the government please advise the defendant as to the maximum possible penalty provided by the law for this offense.

MS. HEBETS: Yes, your Honor. With respect to this offense, and including the defendant's prior drug, felony

> drug convictions *for which an enhancement has already been filed*, the maximum penalty which the defendant is exposed to is a mandatory term of imprisonment of life.
>
> Q.  Alright. Mr. Gonzales, do you understand that that is the maximum sentence the Court can impose in this case?
>
> A.  Yes, I do, your Honor.
>
> Q.  Do you understand that in regard to Count One, that absent a motion for downward departure filed by the government, this Court will be required to impose a mandatory term of life imprisonment in this case?
>
> A.  Yes, I do.

[Doc. 171, Tr. of Proc. Oct. 19, 2006, p. 11]. Gonzales further acknowledged his understanding that, even if a government motion for downward departure was filed, the Court still had the authority to impose a life term of imprisonment. [*Id*., p. 14]. In addition, the PSR disclosed to Gonzales and his attorney on February 6, 2007, very clearly and unequivocally references the § 841 notice of enhancement filed by the United States and notes in several places throughout the report that Gonzales was subject to a mandatory life term of imprisonment. At the time of sentencing, Gonzales acknowledged that he had read the PSR and had reviewed it with his attorney. [Doc. 170, Tr. of Proc. March 12, 2007, pp. 7-8]. Gonzales made no objection to the PSR nor did he state any objection during the change of plea hearing or the sentencing hearing with respect to whether or not the mandatory life term of imprisonment applied to his case.

In addition to the above, a sentencing memorandum was filed on behalf of the defendant

by his attorney.  On the very first page of that sentencing memorandum, it states that "because of Defendant's prior criminal history, the Court is obligated by statute to impose a sentence of life in prison." [Doc. 131].  Any suggestion by the defendant that he was not aware that he faced a mandatory life term of imprisonment is utterly incredible and without merit.

Lastly, the defendant argues that his "sentence should have been calculated from the drugs that were taken from me."  The precise nature of the defendant's claim here is difficult to understand.  He does not further elaborate.  In any event, the defendant stipulated, as part of his plea agreement, that he had conspired with others "to distribute and to possess with the intent to distribute ten kilograms of cocaine." [Doc. 77].  More importantly, at the time of the change of plea hearing, Gonzales testified under oath that his stipulation was true.  Gonzales cannot now contradict his earlier stipulation and sworn testimony.  This argument lacks any merit as well.

## IV.    Conclusion

For the reasons set forth herein, petitioner's motion to hold in abeyance his § 2255 motion, [Doc. 169], is DENIED[2].  Further, the Court holds that petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States and his motion to vacate,

---

[2]    Petitioner's motion to hold his § 2255 motion in abeyance was filed on June 12, 2009.  In that motion and accompanying memorandum, Gonzales stated that his attack on the Louisiana conviction had been dismissed by the United States District Court for the Eastern District of Arkansas.  He indicated that it was his intention to submit a petition to the United States District Court for the Western District of Wisconsin pursuant to 28 U.S.C. § 2241 challenging the conviction.  On June 19, 2009, Gonzales, in a letter to the office of the Clerk of this Court, inquired about the status of his abeyance motion.  Then, on March 1, 2010, Gonzales sent a letter to the Clerk inquiring about the status of his § 2255 motion.  Specifically, Gonzales noted that all briefing had been completed and that he would very much appreciate being informed when a decision would be rendered by the Court.  It thus appears from these filings that Gonzales no longer wishes to pursue his motion to hold the matter in abeyance.  In any event, the motion to hold in abeyance is without merit.

set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be DENIED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id*.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurors would find the district court's assessment of the constitutional claims debatable or wrong." Having examined each of the petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore, the Court will deny petitioner a certificate of appealability.

A separate judgment will enter.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE